UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROLANDO H., on behalf of IZA S., <br><br> Plaintiff, <br><br> v. <br><br> MARTIN O'MALLEY, COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. 2:23-cv-00651-PD <br><br> **MEMORANDUM OPINION AND ORDER VACATING AGENCY DECISION** |

Plaintiff challenges the denial of her application for Social Security Disability Insurance Benefits and Supplemental Security Income Benefits. For the reasons stated below, the decision of the Administrative Law Judge is vacated, and the Court remands this matter on an open record for further proceedings.[1]

---

[1] Plaintiff Iza S. passed away in July 2021, and her husband Rolando H. filed a Substitution of Party Upon the Death of the Claimant. [AR 21, 616-19.] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Fed. R. Civ. P. 25(d), Martin O'Malley is substituted for Kilolo Kijakazi as the defendant in this action.

I.      **Pertinent Procedural History and Disputed Issues**

On June 13, 2013, Plaintiff applied for a period of disability, disability insurance benefits, and supplemental security income, alleging that she became disabled on February 14, 2012. [Administrative Record ("AR") AR 629-36.][2]  The applications were denied initially on September 30, 2013. [AR 112-20.]  On December 18, 2014, a hearing was held before an Administrative Law Judge ("ALJ"). [AR 91-110.]  On January 20, 2015, the ALJ issued a decision denying Plaintiff's claims. [AR 112-20, 131-48.]  On February 25, 2015, Plaintiff filed a request for review with the Appeals Council. [AR 285-86.]  On June 17, 2016, the Appeals Council granted Plaintiff's request for review and remanded the case to the ALJ to reconsider the record and issue a new decision. [AR 153-58.]

On August 2, 2017, a second hearing was held before a different ALJ. [AR 67-90.]  On September 26, 2017, the second ALJ issued a decision denying Plaintiff's claims. [AR 159-81.]   On November 28, 2017, Plaintiff filed a second request for review with the Appeals Council. [AR 365-69.]  On June 30, 2020, the Appeals Council granted the request for review and remanded the case to an ALJ for a third hearing on the matter. [AR 213-19.]  In July 2021, Plaintiff passed away. [AR 21.]

On February 28, 2022, a third hearing was conducted by a different ALJ.  Plaintiff's husband and her counsel were present and the third ALJ heard testimony from a medical expert, Dr. Arnold Ostrow, and a vocational expert. [AR 49-66.]  On March 15, 2022, the ALJ issued a decision finding that Plaintiff was not disabled. [AR 19-40.]  The Appeals Council denied Plaintiff's request for review on November 29, 2022, rendering the ALJ's decision the final decision of the Commissioner. [AR 1-8.]

---

[2] The Administrative Record is CM/ECF Docket Numbers 9-3 through 9-17.

The ALJ followed the five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act. *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995), *superseded on other grounds by regulation as stated by Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022); 20 C.F.R. § 416.920(a). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 14, 2012, the alleged onset date. [AR 23 ¶ 2.] At step two, the ALJ found that Plaintiff had the following severe impairments: type II diabetes mellitus with hyperglycemia and neuropathy, right carpal tunnel syndrome, degenerative disc disease of the lumbar spine, hypertension, coronary artery disease status post ST-elevated myocardial infarction and primary PCI mid distal RCA with DES and inferior posterior STEMI, and obesity. [AR 24 ¶ 3.] The ALJ found that these impairments significantly limit the ability to perform basic work activities. [AR 24.] At step three, the ALJ found that Plaintiff does "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." [AR 26 ¶ 4.]

Before proceeding to step four, the ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b)[3] and 416.967(b) with the following limitations:

---

[3] "Light work" is defined as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.
20 C.F.R. § 404.1567(b).

3

> except with fluency, but not literacy, in English and the ability to lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk/sit 6 hours in an 8 hour workday; never reach the bilateral upper extremities above shoulder height; no more than occasionally push and pull in all other directions bilaterally; frequent handling, feeling, fingering bilaterally; no more than occasionally operate foot controls bilaterally; no more than occasionally perform postural activities, but never climb ladder/rope/scaffolds; and never work around unprotected heights or heavy equipment.

[AR 29 ¶ 5.]

At step four, the ALJ found that Plaintiff was capable of performing past relevant work as a "Cashier I" (Dictionary of Occupational Titles ("DOT") 211.362-010), as actually and generally performed. [AR 40 ¶ 6.] Accordingly, the ALJ concluded that Plaintiff had not been under a disability between February 14, 2012, through the date of decision. [AR 40.]

Plaintiff challenges the ALJ's decision in two respects: (1) Whether the ALJ erred in ending the sequential process at step four when the ALJ gave great weight to physical limitations assessed by medical expert Dr. Ostrow that preclude Plaintiff from performing her past relevant work ("PRW") as a "Cashier I;" and (2) Whether the ALJ erred in failing to provide clear and convincing reasons to reject the mental limitations assessed by the examining mental health doctors. [*See* Dkt. Nos. 11 at 5-15; 15 at 5-17; 16 at 2-6.]

## II.  Standard of Review

Under 42 U.S.C. § 405(g), a district court may review the agency's decision to deny benefits. A court will vacate the agency's decision "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." *Coleman v. Saul*, 979 F.3d 751, 755 (9th Cir. 2020) (citations omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a

4

conclusion." *Id.*; *Biestek v. Berryhill*, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019) (same).

It is the ALJ's responsibility to resolve conflicts in the medical evidence and ambiguities in the record. *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020). Where this evidence is "susceptible to more than one rational interpretation" the ALJ's reasonable evaluation of the proof should be upheld. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008); *Tran v. Saul*, 804 F. App'x 676, 678 (9th Cir. 2020).[4]

Error in Social Security determinations is subject to harmless error analysis. *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012). Error is harmless if "it is inconsequential to the ultimate nondisability determination" or, despite the legal error, "the agency's path is reasonably discerned." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

**III. Discussion**

    **A. The ALJ's Determination That Plaintiff Could Perform Her Past Relevant Work as a Cashier I is Not Supported by Substantial Evidence**

Plaintiff asserts that the ALJ's determination that she could perform her past relevant work ("PRW") as a "Cashier I" as actually and generally performed is not supported by substantial evidence. [Dkt. No. 11 at 5-6.] The ALJ gave "great weight" to the opinion of Dr. Ostrow that Plaintiff was limited to "only occasional push, pull or reach in all other directions bilaterally." [AR 39, 60.] Plaintiff asserts that she does not possess the ability to frequently reach and therefore could not perform her past work as a Cashier I as actually performed or per the DOT. [Dkt. No. 11 at 5-6.] In

---

[4] Although statements in unpublished Ninth Circuit opinions "may prove useful [] as examples of the applications of settled legal principles," the Ninth Circuit has cautioned lower courts not to rely heavily on such memorandum dispositions particularly as to issues of law. *Grimm v. City of Portland,* 971 F.3d 1060, 1067 (9th Cir. 2020) ("a nonprecedential disposition is not appropriately used ... as the pivotal basis for a legal ruling by a district court").

addition, Plaintiff asserts that because the ALJ found her not literate [AR 29], she was precluded from performing the job of Cashier I as generally performed per the DOT. [Dkt. Nos. 11 at 5-6; 16 at 2-3.]

1. **Legal Standards**

    a) **Residual Functional Capacity ("RFC")**

An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Social Security Ruling 96-8P, 1996 WL 374184, at *1 (1996). It reflects the most a claimant can do despite their limitations. *Smolen v. Chater,* 80 F.3d 1273, 1291 (9th Cir. 1996). An RFC determination must be based on all of the relevant evidence, including the diagnoses, treatment, observations, and opinions of medical sources, such as treating and examining physicians. 20 C.F.R. § 404.1545. The ALJ is responsible for translating and incorporating supported medical evidence into a succinct RFC. *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). It is the ALJ's responsibility to resolve conflicts in the medical evidence and ambiguities in the record. *Ford,* 950 F.3d at 1149. Where this evidence is "susceptible to more than one rational interpretation" the ALJ's reasonable evaluation of the proof should be upheld. *Ryan*, 528 F.3d at 1198.

    b) **Step Four**

At step four, a claimant has the burden of proving that she cannot return to her past relevant work as actually or generally performed in the national economy. 20 C.F.R. § 404.1520(f); *Stacy v. Colvin*, 825 F.3d 563, 569 (9th Cir. 2016); *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002); *Pinto v. Massanari,* 249 F.3d 840, 844 (9th Cir. 2001). Although the burden of proof lies with the claimant, the ALJ still has a duty to make factual findings to support his conclusion. *Pinto,* 249 F.3d at 844. In particular, the ALJ must make "specific findings" as to the claimant's RFC, "the physical and mental

demands" of the past relevant work, and whether the RFC would permit a return to his past work. *See id.* at 845 (citing SSR 82–62, 1982 WL 31386, at *4 (Jan. 1, 1982)).

In defining a claimant's past relevant work as actually performed, the ALJ may use "a properly completed vocational report" and "the claimant's own testimony." *Pinto,* 249 F.3d at 845 (citations omitted). To ascertain the requirements of occupations as generally performed in the national economy, the ALJ may rely on VE testimony or information from the DOT. SSR 00–4P, 2000 WL 1898704, at *2 (Dec. 4, 2000) (at steps four and five, SSA relies "primarily on the DOT (including its companion publication, the SCO) for information about the requirements of work in the national economy" and "may also use VEs ... at these steps to resolve complex vocational issues"); SSR 82–61, 1982 WL 31387, at *2 (Jan. 1, 1982) ("The [DOT] descriptions can be relied upon—for jobs that are listed in the DOT—to define the job as it is *usually* performed in the national economy." (emphasis in original)).

When a VE provides evidence at step four or five about the requirements of a job, the ALJ has a responsibility to ask about "any possible conflict" between that evidence and the DOT. *See* SSR 00–4p, 2000 WL 1898704, at *4; *Massachi v. Astrue,* 486 F.3d 1149, 1152–54 (9th Cir. 2007) (holding that application of SSR 00–4p is mandatory). The DOT is usually "the best source for how a job is generally performed." *Pinto,* 249 F.3d at 845. Social Security Ruling ("SSR") 00-4p, available at 2000 WL 1898704, at *4 (Dec. 4, 2000), explicitly requires that the ALJ determine whether the VE's testimony deviates from the DOT, and whether there is a reasonable explanation for any deviation. The procedural requirements of SSR 00-4p ensure that the record is clear as to why an ALJ relied on a VE's testimony, particularly in cases where the expert's testimony conflicts with the DOT. *Massachi,* 486 F.3d at 1153. Where the ALJ fails to obtain an explanation for

7

and resolve an apparent conflict—even where the VE did not identify the conflict—the ALJ errs. *Edmonds v. Berryhill*, 2017 WL 1217081, at *3 (C.D. Cal. Mar. 31, 2017).

### 2. The Medical Expert and Vocational Expert's Testimony at the Hearing and the ALJ's Decision

#### a) Dr. Ostrow's Testimony and the ALJ's Decision

At the administrative hearing, medical expert Dr. Arnold Ostrow testified that he reviewed Plaintiff's medical records. [AR 58.] Dr. Ostrow found that the objective medical records supported the severe medical impairments, since the alleged onset date, of type II diabetes mellitus with neuropathy; degenerative disc disease of the lumbar spine; bilateral AC degenerative joint disease; and coronary artery disease status post myocardial infarction, angioplasty, and stent placement. [AR 58.] Dr. Ostrow found that none of Plaintiff's impairments met or equaled a medical listing. [AR 59.] Dr. Ostrow opined that Plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk/sit 6 hours in an 8 hour workday; *never raise the bilateral upper extremities above shoulder height; no more than occasionally push and pull and reach in all other directions bilaterally*; frequent handling, gripping, fingering bilaterally; no more than occasionally operate foot controls bilaterally; no more than occasionally perform postural activities, but never climb ladder/rope/scaffolds; and never work around unprotected heights or rapidly moving equipment. [AR 60.] (emphasis added.) Dr. Ostrow opined that these limitations were applicable since the alleged onset date, through the date last insured, and until Plaintiff's passing. [AR 60.]

The ALJ gave "great weight" to Dr. Ostrow's opinion. [AR 39 (citing AR 58-60).] The ALJ found Dr. Ostrow's opinion is supported by Plaintiff's

history of uncontrolled type II diabetes mellitus with neuropathy in the upper and lower extremities, further complicated by chronic low back pain, degenerative joint disease of the AC joints, right carpal tunnel syndrome, and, later, weight gain. [AR 39.] It is also supported by Plaintiff's hypertension and 2018 myocardial infarction status post angiography and stent placement. [AR 39.] The ALJ found Dr. Ostrow's opinion is consistent with more recent progress notes reflecting normal musculoskeletal, neurological, respiratory, cardiovascular exam findings that do not support greater limitations, and with tests noting stability of her cardiovascular condition. [AR 39.]

### 3. The VE's Testimony and the ALJ's Decision

At the hearing, the ALJ asked the VE to classify Plaintiff's past work, and the VE responded that he did not have enough information to classify Plaintiff's work. [AR 63.] The ALJ stated that the prior judge found Plaintiff's past work was a Cashier I, 211.362-010, sedentary, SVP 5, to which the VE responded that he did not have enough information to analyze her past work other than as a Cashier I. [AR 64.] The ALJ then asked Plaintiff's counsel whether Plaintiff was a citizen, to which she responded, yes and that she was from Nicaragua. [AR 64-65.]

The ALJ stated that she was assuming that Plaintiff "was literate if she was working as a cashier, but maybe not fluent," and then posed a hypothetical question to the VE asking whether an individual who "was capable of light work, but she was limited to no reaching above shoulder bilaterally. And only occasional push-pull. She could frequently though handle, finger, and feel bilaterally. … Occasionally use foot pedals. She could occasionally do all the postural components. She needs to avoid hazards, and those would include heights, ladders, heavy equipment, scaffolds. Do you believe that would preclude the past work either as she performed it or as it's

9

typically performed?" The VE responded: "no." [AR 65.] The VE was not asked any further questions.

In her decision, the ALJ stated:

> The claimant was capable of performing past relevant work as a cashier I. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).
>
> The claimant had past work as a cashier I (DOT No. 211.362-010) – sedentary, skilled work with SVP 5. The vocational expert testified an individual with the residual functional capacity such as the claimant could perform her past work as actually and generally performed.
>
> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant was able to perform it as actually and generally performed.

[AR 40.]

### 4. Analysis

Plaintiff contends that the ALJ's determination that she could perform her past relevant work as a "Cashier I" both as actually performed and as described in the DOT is not supported by substantial evidence. [Dkt. No. 11 at 5.] Plaintiff argues that she cannot perform the past work as performed because she lifted at least 40 pounds [AR 74-75, 97].[5] Both the first and second ALJs found that Plaintiff could not perform her past work as a Cashier I as actually performed. [AR 147, 176.]

Further, Plaintiff asserts that she did not possess the reaching ability to perform the job of Cashier I. [Dkt. No. 11 at 5.] The DOT describes this job as requiring frequent reaching (exists from 1/3 to 2/3 of the time). *See* DICOT 211.362-010, 1991 WL 671835. Here, the ALJ gave "great weight" to the

---

[5] At the first and second administrative hearings, Plaintiff testified that she lifted more than 40 pounds at her job as a cashier.

10

opinion of Dr. Ostrow who assessed Plaintiff with the ability to only occasionally reach in all directions. [AR 60.] Dr. Ostrow opined that this limitation applied for the entire relevant period starting in February 2012. [AR 60.]

The Commissioner argues that the ALJ considered the entire record and reasonably determined Plaintiff's RFC based on the objective evidence of record, Plaintiff's subjective allegations, and various medical opinions. [Dkt. No. 15 at 5 referring to AR 29-40.] The Commissioner argues that while Plaintiff focuses on Dr. Ostrow's medical opinion, all of the other physicians opined that Plaintiff could perform frequent reaching. [Dkt. No. 15 at 6 referring to AR 33-34, 38-39.] The Commissioner is mistaken. While the ALJ discussed Plaintiff's medical records and reports from several doctors, the ALJ gave little weight to the opinion of Dr. Juan Montes that Plaintiff could reach frequently, and the ALJ did not specifically discuss or adopt the opinions of Dr. Sedgh, Dr. Kantor, or Dr. Amado's concerning Plaintiff's ability to reach during the relevant time period. [*See* AR 31, 32-34, 38-39.]

The ALJ gave "great weight" to the opinions of Dr. Ostrow, Dr. Kantor, and Dr. Amado (although the ALJ gave some parts of Dr. Amado's opinion less weight). [AR 33-34, 38-39.] Notably, the ALJ included all of Dr. Ostrow's limitations in the RFC but did not include or address Dr. Ostrow's opinion that Plaintiff could only reach occasionally. [AR 29, 39.] The Commissioner concedes that the ALJ did not specifically discuss the difference between the RFC finding and Dr. Ostrow's opined reaching limitations. [Dkt. No. 15 at 8 referring to AR 39.] The Commissioner argues that any error by the ALJ in this regard is harmless. However, because the ALJ specifically gave "great weight" to Dr. Ostrow's opinion, the ALJ was "required either (1) to include [Dr. Ostrow's] limitation in [Plaintiff's] Residual Functional Capacity (RFC), or (2) to explain why [she] did not." *Flores v. Berryhill*, 725 F. App'x 575, 576

11

(9th Cir. 2018) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (requiring the ALJ to account for all relevant evidence in assessing the RFC). Neither step was taken here. The ALJ erred by giving "great weight" to Dr. Ostrow's opinion, but then failing to explain why she did not accept or incorporate important aspects of that opinion regarding reaching limitations into the RFC. *See Mellow v. Saul*, 830 F. App'x 882, 883 (9th Cir. 2020) (holding that an ALJ erred where he afforded medical opinions "substantial weight" but failed to incorporate the limitations into the RFC without explanation); *Martin v. Commissioner of Social Sec. Admin.*, 472 F. App'x 580, 580 (9th Cir. 2012) (same where the ALJ neither incorporated a physician's opinion of work limitations nor gave reasons for rejecting it); *George S. v. Kijikazi*, 2022 WL 479906, at *4 (C.D. Cal. Feb. 16, 2022) ("While the ALJ was not required to include in the RFC each limitation identified in the record, the ALJ could not simply ignore the portions of Dr. Bartell's opinion that were inconsistent with the assessed RFC."); *Cox v. Colvin*, 639 F. App'x 476, 477 (9th Cir. 2016) (holding that an ALJ erred when he gave "significant weight" to medical opinions but incorporated them in the RFC only in part, without providing any reasons).

Further, while the ALJ purported to give great weight to the functional assessments of Dr. Ostrow, she failed to include all of Dr. Ostrow's functional limitations in the RFC, including the limitation to only occasional reaching. Thus, the hypothetical upon which the VE testified was incomplete and the VE's testimony cannot provide substantial evidence for the ALJ's decision that Plaintiff could perform her past work as a Cashier I. *Valentine v. Comm'r*, 574 F.3d 685, 690 (9th Cir. 2009) (hypothetical presented to the VE is derived from the RFC; to be valid, the hypothetical presented to the VE must incorporate all of a plaintiff's limitations).

In addition, because the ALJ found Plaintiff not literate in English [AR 29], Plaintiff argues that the VE's testimony that she could perform the work of a Cashier I as generally performed deviated from the DOT. [Dkt. Nos. 11 at 5-6; 16 at 2-3.] The DOT description for Cashier I requires a Language Level of 3.[6] In *Pinto*, the Ninth Circuit declined to decide whether an ALJ is always required to consider a claimant's language skills at Step Four of the sequential evaluation. *Pinto,* 249 F.3d at 847 n.5 ("It is unclear whether the ALJ should have considered [claimant's] language skills at all at step four, given that [claimant's] difficulties with language are independent of the disability upon which she bases her claim. We decline to reach the question of whether illiteracy may properly be considered at step four of a disability determination."). However, the court in *Pinto* stated that when an ALJ relies upon a DOT description regarding how a job is generally performed at Step Four, where illiteracy or a language limitation creates a conflict with the DOT's description, the ALJ must explain any such deviation. *Id.* at 847 ("We merely hold that in order for an ALJ to rely on a job description in the [DOT] that fails to comport with a claimant's noted limitations, the ALJ must definitively explain this deviation."). The court in *Pinto* acknowledged that it did not "suggest that applicants who are illiterate are entitled to a finding in step four of the disability proceeding that they are disabled." *Id.* Thus, the ALJ's failure to obtain a reasonable explanation to resolve the apparent conflict between the DOT requirements and Plaintiff's literacy limitations was erroneous. In sum, reversal is warranted.

---

[6]Language: Level 3 - READING: Read a variety of novels, magazines, atlases, and encyclopedias. Read safety rules, instructions, in the use and maintenance of shop tools and equipment, and methods and procedures in mechanical drawing and layout work. WRITING: Write reports and essays with proper format, punctuation, spelling, and grammar, using all parts of speech. SPEAKING: Speak before an audience with poise, voice control, and confidence, using correct English and a well-modulated voice. *See* DICOT 211.362-010 (G.P.O.), 1991 WL 671835.

13

### IV. Other Issues and Remedy

Plaintiff also argues that the ALJ's decision is erroneous because the ALJ failed to provide clear and convincing reasons to reject the uncontroverted opinions of the examining mental health doctors and requests the Court to credit those opinions as true and award the benefits sought. [Dkt. No. 11 at 7-13.] Because the Court concludes that this case be remanded on an open record, the Court declines to address Plaintiff's other claims of error. *Google LLC v. Oracle America, Inc.*, ___ U.S. ___, 141 S. Ct. 1183, 1197 (2021) (appellate courts "should not answer more than is necessary to resolve the parties' dispute" on appeal); *see also Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021) ("While Smith raises a number of issues on appeal, the court addresses only those relevant to its decision to remand the case to the agency.").

Further, an award of benefits is not warranted here, "[i]n light of the inconsistencies, conflicts, and gaps in the record that require further administrative proceedings[.]" *Dominguez v. Colvin*, 808 F.3d 403, 410 (9th Cir. 2015). Thus, the Court remands this matter on an open record for further proceedings.

### V. Order

Accordingly, for all the reasons stated above, the Court finds that the ALJ's decision is not free of legal error or supported by substantial evidence and is therefore VACATED. The case is remanded on an open record.

A separate judgment will issue.

IT IS SO ORDERED.

Dated: March 11, 2024

*Patricia Donahue*
_____
HON. PATRICIA DONAHUE
UNITED STATES MAGISTRATE JUDGE

14